SUMMERS, Justice.
In a bill of information filed August 24, 1976 Ernest Wayne Haley, Jr., was charged with attempted murder of one Mervin Roy. La.Rev.Stat. 14:27. The attempt involved the shooting of Mervin Roy by the defendant. After a plea of not guilty and not guilty by reason of insanity, defendant was found guilty in a trial by jury and sentenced to imprisonment for twelve years. On this appeal one assignment of error is relied upon for reversal of the conviction and sentence.
Prior to pleading defense counsel moved for the appointment of a sanity commission to examine defendant and report on his present sanity and his sanity at the time of the commission of the alleged offense. The court appointed two psychiatrists, Dr. Keith Nabours and Dr. Harper Willis, to examine defendant in accordance with the defense motion and fixed a date for a hearing on the report of the sanity commission.
In his written report to the court filed in connection with the hearing held on September 22, 1976 Dr. Nabours found, as a result of his examination, “That Ernest Haley, Jr., is presently mentally competent. In my opinion he was probably sane at the time of the commission of the alleged of *1012 fense.” He reported further that Haley fully understood the natural, probable and usual consequences of his acts and that Haley was able to adequately assist his counsel in the defense of his cause.
When cross-examined at the hearing concerning his examination, Dr. Nabours said he was not sure Haley had an acute brain syndrome. Maybe, he said, Haley had a mild degree of brain impairment since birth. He repeated the conclusion reached in his written report that Haley was probably competent at the time of the offense.
Dr. Willis examined Haley on September 13, 1976. His written report gave a diagnostic impression that Haley was a passive aggressive personality with drug addiction. He was of the opinion the patient apparently had an acute brain syndrome secondary to drugs at the time of the commission of the offense. Haley had no recall of details and the brain syndrome was subsiding. He concluded Haley was presently able to understand the nature of the charges against him and to assist counsel in his defense.
During the hearing defense counsel stated that the defendant was indigent and that he, defense counsel, had been appointed by the court to represent him. There were therefore no funds available to the defense to retain the services of a psychiatrist. He then moved that Dr. Willis be appointed by the court to assist the defense during the trial in order that defendant might have the full benefit of psychiatric examinations and testimony on the question of his mental competence at the time of the commission, of the offense. Costs of Dr. Willis’ services to be paid by the State or Dr. Willis should be required to serve without pay just as defense counsel was required to do. The motion was denied.
A like motion was later made to appoint Dr. Nabours, which was also denied. Defense counsel then moved that any qualified psychiatrist be appointed to assist the defense at the expense of the State and this motion was denied. Objection was made to these rulings and they are assigned as error.
The trial judge then ruled that the defendant was mentally competent to stand trial.
The defense brief acknowledges that the proposition presented by the rulings of the trial judge had been rejected by this Court in a number of its decisions, citing State v. Stuart, 344 So.2d 1006 (La.1977); State v. Gray, 258 La. 852, 248 So.2d 313 (La.1971) and State v. Square, 257 La. 743, 244 So.2d 200 (1971). However, the instant case is said to be distinguishable from this Court’s prior adjudications. Therefore, to deny appointment of a medical expert to this defendant will deny him due process and equal protection guaranteed by the Fourteenth Amendment to the Constitution of the United States.
The distinguishing feature between the three cases cited and the case at bar is said to be factual. In the cited cases the defense argues the Sanity Commission was unanimous in finding the defendant presently competent to stand trial and capable of understanding right from wrong at the time the offense was committed. In the cited cases the defense contends none of the Commissioners questioned the sanity of the defense at the time of the commission of the crime.
In the case at bar, however, it is asserted in brief that Dr. Willis noted the presence of an acute brain syndrome, secondary to drugs, with loss of memory of the events. Dr. Willis also testified that further testing procedures would be necessary in order to reach a conclusion as to the sanity of the defendant at the time of the offense. Thus, the argument goes, at least one member of the Commission doubted defendant’s sanity at the time of the offense and the defense was without funds to retain the services of experts to perform the necessary examinations and give the required testimony.
In our view the record amply supports the ruling of the trial judge. Dr. Nabour’s testimony places considerable doubt on the opinion of Dr. Willis that defendant had an acute brain syndrome. He was not sure that defendant had such a syndrome, but that maybe Haley had a mild degree of brain impairment. Nevertheless, he con- *1013 eluded that Haley was probably competent at the time of the offense.
The weight of Dr. Willis’ diagnostic impression that Haley had no memory of the events is contradicted by the statement Haley gave to the police on August 20, 1976, the very day of the shooting, only twenty-three days prior to Dr. Willis’ examination. On that occasion he gave the police a detailed account of the events leading to and surrounding the shooting, the provocation, place names, conversation, descriptions of objects, the actual number of shots fired at the victim, and defendant’s actions in attempting to escape. In summary his statement recited, “All I can say is that I’m sorry that I didn’t kill the guy, I’m glad that I didn’t hit anyone else.”
Haley’s statement, therefore, negates the idea that he did not know what he was doing, had no recollection of the facts surrounding the offense or that he did not know right from wrong.
In addition to the authorities cited by the defense, the case of State v. Thomas, 310 So.2d 517 (La.1975) and State v. Taylor, 347 So.2d 172 (La.1977) also stand for the proposition that our statutory procedure is not constitutionally infirm because it does not afford the defendant the right to have the State pay for an independent psychiatric examination.
This Court’s latest expression on the subject is found in State v. Taylor, supra, saying:
“A defendant is not entitled of right to an examination and evaluation of his sanity at the time of the offense. LSA-C. Cr.P. Art. 650. Whether a sanity commission is directed to investigate his sanity at that time lies within the discretion of the trial judge. State v. Link, La., 301 So.2d 339 (1974) and the cases cited therein.
“The issue of defendant’s sanity at the time of the offense is a jury question. The defendant could, as the trial judge noted, interrogate Dr. Healy on that issue at the trial.”
On the basis of the facts of record in the case at bar the ruling of the trial judge is supported by the record, for the evidence is not convincing that this defendant had acute syndromes or loss of memory, and there was therefore no abuse of discretion in denying the defense motion.
For the reasons assigned, the conviction and sentence are affirmed.