344 So.2d 973 (1977)
STATE of Louisiana
v.
Darryl J. MOORE.
No. 58662.
Supreme Court of Louisiana.
April 11, 1977.
*975 Raleigh Newman, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., James L. Babin, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Darryl J. Moore was indicted on a charge of second-degree murder, a violation of R.S. 14:30.1, for the murder of Vicki Diane Nassar. The defendant entered a plea of not guilty and not guilty by reason of insanity. A jury of twelve found him guilty as charged by a vote of ten to two. The defendant was sentenced to imprisonment at hard labor for life, without eligibility for parole, probation or suspension of sentence for forty years. The defendant assigns seven errors for reversal of his conviction and sentence.
Assignment of Error No. 6 was neither briefed nor argued and is thereby deemed abandoned. State v. Matthews, 292 So.2d 226 (La.1974); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
On Sunday, November 30, (or December 7) 1975, the defendant and Danny Walter went to Houston, Texas to see Leroy Pattin to buy some marijuana. Pattin had arranged for the defendant to buy marijuana from a "connection," and the defendant and Walter met the "connection" and a number of other persons in a room in Houston to see the marijuana. Rather than buy the marijuana, however, the defendant exited the meeting and when the "connection" left, the defendant put a plastic gun to his head, stole two pounds of marijuana and $200 from him and then returned to Sulphur, Louisiana.
Subsequently, the defendant learned that the "connection" and two other men were looking for him and that someone was going to "take care of" him. The defendant, fearful for his life, moved from his home in Sulphur and spent time at his parents' house in Vinton and Danny Walter's home in Orange, Texas. A few weeks later, while back in Sulphur picking up his belongings, the defendant saw Vicki Nassar. Vicki and her husband Nicki were also involved with trafficking in marijuana and one or both of them had apparently been in the room in Houston where the defendant stole the marijuana. Vicki indicated that she and her husband were breaking up. The defendant and Vicki arranged to meet Saturday night in front of the Vinton High School. However, after discussing the situation with Danny Walter, the defendant decided not to meet Vicki. Two days later, on Monday, February 2, 1976, the defendant and Danny Walter were driving around Sulphur when they again saw Vicki Nassar. She stopped her car and rolled down her window; the defendant pulled up next to her. They talked and Vicki asked where the defendant had been on Saturday night. The defendant replied that he didn't feel like being set up by her to which she replied, "They didn't see you there." At this point the defendant reached down between the console and the passenger seat where he had a .22 caliber magnum pistol. He pushed Danny Walter out of the way and fired three shots at Vicki Nassar, killing her.

Assignments of Error Nos. 1 and 2
Following the State's opening statement, defense counsel requested the trial judge to issue instanter subpoenas directed to the State or the sheriff's department to furnish the defendant with a copy of the complaint relative to the shooting of Vicki Nassar, and all other complaints or affidavits which may have been filed against the defendant *976 which the State or the sheriff's office may have in their possession. The request also sought the issuance of a subpoena for the production of "rap sheets" on all of the State's witnesses who were not police officers. The trial judge ruled that the State was not required to furnish that information and therefore denied the motion. That denial forms the basis of Assignments of Error Nos. 1 and 2.
As to the complaint regarding the shooting of Vicki Nassar, defense counsel did not indicate why he wanted the complaint at the time it was requested. There is no allegation nor showing that the defendant had inadequate notice of the crime with which he was charged, nor that he was in any way surprised. In addition, no prejudice to the defendant was alleged nor demonstrated. Therefore, the failure of the trial judge to issue the subpoena for this complaint does not constitute reversible error. C.Cr.P. 921.
The defendant pleaded not guilty and not guilty by reason of insanity. In brief the defendant alleges that access to the other complaints against the defendant was necessary in order to inform the jury of specific instances of his antisocial behavior in the past to show that he was not in full control of his faculties and did not know the difference between right and wrong at the time of the offense.
The defendant first made his requests for these complaints after trial had already begun. It thus appears that the complaints would not have been used in preparation for trial (i. e., to locate the complainants to have them testify at trial) but rather for use at trial itself. This is not a situation where the existence of the complaints is in question. Had the subpoena issued and the complaints produced, they would have been inadmissible at trial as hearsay. The defendant may have been entitled to this information if needed to prepare for trial, but the fact that the request was not made until the trial was under way demonstrates that this was not the purpose for which the documents were sought. Since the complaints themselves would have been inadmissible, no prejudice was suffered by the defendant as a result of the trial judge's ruling.
The defendant's final request was for "rap sheets" on all prosecution witnesses other than police officers. Presumably the information contained in these sheets would have been used by the defendant to impeach the credibility of the State's witnesses. The Code of Criminal Procedure does not specifically authorize the issuance of "Instanter subpoenas." However, C.Cr.P. 732 provides:
"A subpoena may order a person to produce at the trial or hearing, books, papers, documents, or any other tangible things in his possession or under his control, if a reasonably accurate description thereof is given; but the court shall vacate or modify the subpoena if it is unreasonable or oppressive."
The Code of Criminal Procedure provides no time limit as to when such applications for subpoenas must be filed. Prudence would dictate however that when the need for documents exists and is known prior to trial that counsel file his application for the issuance of a subpoena at least prior to the commencement of trial.
In this case the motion for issuance of the subpoenas was not made until after the State completed its opening statement. In addition, the record, as designated by the defendant, does not give a list of the State's witnesses nor any indication whether any of the witnesses in fact had criminal records. It is possible that defense counsel was able to impeach State witnesses through the use of prior convictions. Lastly, the defendant does not allege that he was prejudiced as a result of this ruling, nor is any prejudice discoverable in the record before us. Therefore, although a defendant might be entitled to those records if a proper and timely application for subpoena was filed, the action of the trial judge here did not constitute reversible error.

Assignment of Error No. 3
During the trial the State sought to introduce the defendant's confession into *977 evidence. Defense counsel objected on the grounds that the confession was not freely and voluntarily given and that it contained evidence of other crimes which should be excluded. The defendant neither briefed nor argued the question of the voluntariness of the confession, and it is thereby deemed abandoned. State v. Matthews, supra; State v. Edwards, supra.
The confession recounted the entire series of events that led up to Vicki Nassar's murder, including the robbery of the marijuana and $200 from the "connection" in Houston and an assault by the defendant on one of the persons who had been present at the meeting in Houston. The defendant contends that pursuant to R.S. 15:450 and the decisions of this court in State v. Snedecor, 294 So.2d 207 (La.1974); State v. Fontenot, 292 So.2d 194 (La.1974) and State v. Haynes, 291 So.2d 771 (La.1974), the trial judge should have deleted that portion of the confession that made reference to other offenses and only permitted the introduction of that portion of the confession dealing with the murder of Vicki Nassar.
The relevant portion of the trial judge's per curiam to this assignment reads as follows:
"In this instance, the `other crimes' are related to the offense for which the defendant was being tried. The recital of the prior events was offered by the defendant to the deputies in his statement in explanation of his reason for killing the victim. A reading of the confession reveals his fear of reprisal for his having `ripped the guy off,' his hiding and his suspicion of the victim intending to `set' him up. The entirety of the confession sheds light on the meaning to him of her utterance immediately preceding the shooting, `They didn't see you there.'
"The portions that might be considered as referring to other crimes cannot be excised without affecting the remainder. Deletion of the portion referring to the events in Houston would have rendered his account of the shooting not only senseless, but completely unexplained. Further, it would have allowed defendant to improperly capitalize on such lack of explanation for the shooting in urging his defense of insanity."
We are in agreement with the trial judge. The defendant pleaded not guilty and not guilty by reason of insanity. The events in Houston prior to the murder demonstrate the defendant's motive for shooting Mrs. Nassar. The chain of events leading up to this crime (including the references to the "other offenses") are relevant to explain the crime charged. It would be impossible to delete a portion of the confession without significantly altering its meaning. Therefore, since the confession was voluntarily given and the portions objected to by the defendant were independently relevant to explain the crime charged, the trial judge did not err in permitting the introduction of the entire confession. Cf. State v. Scott, 320 So.2d 538 (La.1975); State v. Hollingsworth, 337 So.2d 461 (La.1976).

Assignment of Error No. 4
The defense called Dr. James A. Brown as a witness. Defense counsel questioned him as to his qualifications, background and training and then tendered him as an expert witness in the field of neurosurgery. The State then traversed the witness on his qualifications. The State also questioned the witness on his expertise in other fields of medicine. It is this second line of questioning by the State that the defendant contends was improper and an impermissible means by which to discredit this witness.
As the defendant points out, the witness was only tendered as an expert in the field of neurosurgery and defense counsel stipulated that he was not being offered as an expert in psychiatry or any other field. However, the witness also testified on direct examination that he had practiced and combined the fields of psychiatry, neurology and neurosurgery, had done a residency in orthopedic surgery and had subsequently done work in orthopedics.
R.S. 15:466 provides:
"The test of the competency of an expert is his knowledge of the subject about *978 which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
Clearly the prosecutor was entitled to question the witness concerning his qualifications; since the witness had indicated that he had expertise in other areas, questions concerning those areas were not improper. The scope of examination of witnesses is within the sound discretion of the trial judge and his rulings will not be disturbed in the absence of an abuse of discretion. State v. Calloway, 324 So.2d 801 (La. 1976); State v. Fulmer, 263 La. 971, 270 So.2d 116 (1972). There was no abuse of discretion here.

This assignment lacks merit.

Assignment of Error No. 5
The State presented its case in chief and rested, after which the defense presented its evidence. The State then offered its rebuttal evidence and rested. At this point the defense requested the privilege of introducing rebuttal evidence on the issue of temporary insanity. The trial judge denied the motion and the defendant assigns that denial as error.
The normal order of trial in criminal cases is set out in C.Cr.P. 765 which provides:
"The normal order of trial shall be as follows:
"(1) The selection and swearing of the jury;
"(2) The reading of the indictment;
"(3) The reading of the defendant's plea on arraignment;
"(4) The opening statements of the state and of the defendant;
"(5) The presentation of the evidence of the state, and of the defendant, and of the state in rebuttal. The court in its discretion may permit the introduction of additional evidence prior to argument;
"(6) The argument of the state, the defendant, and the state in rebuttal;
"(7) The court's charge;
"(8) The announcement of the verdict or mistrial in jury cases, or of the judgment in nonjury cases; and
"(9) The discharge of the jury in jury cases.
"When there is more than one defendant, the court shall determine the order of trial as between them.
"A defendant may waive his opening statement."
While there is no provision for rebuttal by the defendant, number (5) of the above quoted article authorizes the trial judge, in his discretion, to permit the introduction of additional evidence after the case has been presented by the State and the defense.
The only reason defense counsel offered in support of his motion was that since the defendant has the burden of proof in establishing the defense of insanity, he should be entitled to rebuttal after the State offers evidence to refute that defense. The defendant did not outline what evidence he sought to adduce. In addition, he has not alleged that he was prejudiced, nor is any prejudice demonstrated in the record. Under these circumstances the trial judge did not abuse his discretion in denying defendant's motion.

Assignment of Error No. 7
After the trial judge had charged the jury and the jurors had retired to deliberate, defense counsel objected to the jury charge on the ground that the jurors could have become confused as to the defendant's burden of proof on his defense of insanity. Specifically, the defendant contends that the wording of the charge may have led the jurors to believe that the defendant must establish the defense of insanity by "proof beyond a reasonable doubt" rather than by a "preponderance of the evidence." The portion of the charge that defense counsel found objectionable is as follows:
"And now, ladies and gentlemen, I charge you that if you should be convinced beyond a reasonable doubt from the evidence and the law as I have given it to *979 you, that the accused in this case is guilty of second degree murder, it will be your duty to convict him of that offense. If, however, you should not be convinced beyond a reasonable doubt that he is guilty of second degree murder, but you should be convinced beyond such a doubt that he is guilty of manslaughter, then it will be your duty to render a verdict of guilty of manslaughter. If you should not be convinced beyond a reasonable doubt that the accused is guilty of either second degree murder or manslaughter, then it will be your duty to render a verdict of not guilty. If you are convinced beyond a reasonable doubt that the accused committed the offense, but you are further convinced that at the time of the commission of the offense the defendant was insane under the rules I have given you, then it will be your duty to render a verdict of not guilty by reason of insanity." (Emphasis added).
However, the part of the charge dealing with the defendant's burden of proof immediately preceded the portion attacked, so that the entire section of the charge provided:
"I charge you that the defendant is presumed to be sane. The defense of insanity, at the time of the commission of the offense is an affirmative defense and must be established by the defendant. The accused need not prove his insanity beyond a reasonable doubt. The burden of proof which is placed upon the accused is to establish such insanity by a preponderance of the evidence. The term `preponderance of the evidence' means that evidence or that part of the evidence which is of greater weight, or which is more convincing, and which best accords with reason and probability. A greater number of witnesses will not necessarily constitute a preponderance of the evidence, because you may believe some of the witnesses and you may not believe others. A `preponderance of the evidence' more properly may be said to be that part of the evidence, which, because of its apparent correctness, its convincing nature, its quality or weight, tips the scales. If the evidence presented tips the scales in favor of the party upon whom this burden of proof rests, in this case the defendant, then you should conclude that he has proved his defense of insanity by a preponderance of the evidence. If the evidence fails to tip the scales in his favor, however, then you should conclude that he has failed to prove his defense of insanity by a preponderance of the evidence.
"And now, ladies and gentlemen, I charge you that if you should be convinced beyond a reasonable doubt from the evidence and the law as I have given it to you, that the accused in this case is guilty of second degree murder, it will be your duty to convict him of that offense. If, however, you should not be convinced beyond a reasonable doubt that he is guilty of second degree murder, but you should be convinced beyond such a doubt that he is guilty of manslaughter, then it will be your duty to render a verdict of guilty of manslaughter. If you should not be convinced beyond a reasonable doubt that the accused is guilty of either second degree murder or manslaughter, then it will be your duty to render a verdict of not guilty. If you are convinced beyond a reasonable doubt that the accused committed the offense, but you are further convinced that at the time of the commission of the offense the defendant was insane under the rules I have given you, then it will be your duty to render a verdict of not guilty by reason of insanity."
The charge is not incorrect and needed no clarification.
This assignment has no merit.
Accordingly, the conviction and sentence of the defendant are affirmed.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., concur in decree.